**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MIREYA CUEVAS,                          )   NO. ED CV 12-1004-E
                                        )
                Plaintiff,              )
                                        )
    v.                                  )   **MEMORANDUM OPINION**
                                        )
CAROLYN W. COLVIN, ACTING               )   **AND ORDER OF REMAND**
COMMISSIONER OF SOCIAL SECURITY,[1]     )
                                        )
                Defendant.              )
_____)


        Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

judgment are denied and this matter is remanded for further

administrative action consistent with this Opinion.

///

///

///

_____

        [1]    Carolyn W. Colvin, who became Acting Commissioner of
Social Security as of February 14, 2013, is hereby substituted as
Defendant in this matter.  See Fed. R. Civ. P. 25(d)(1); 42
U.S.C. § 405(g).

**PROCEEDINGS**

Plaintiff filed a complaint on June 19, 2012, seeking review of the Commissioner's denial of disability benefits.  The parties filed a consent to proceed before a United States Magistrate Judge on July 13, 2012.  Plaintiff filed a motion for summary judgment on November 26, 2012.  Defendant filed a cross-motion for summary judgment on February 11, 2013.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed June 21, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

In 2007 and 2008, Plaintiff, a former physical therapy aid, applied for disability insurance benefits asserting disability since July 3, 2003, based on an alleged herniated disc, impaired vision, and torn left rotator cuff (Administrative Record ("A.R.") 59-60, 159-65 (applications), 180-81).  Plaintiff reported that she had undergone four eye surgeries and suffered from severe headaches due to her neck problems, had numbness to both hands, and was limited in her ability to lift, walk and sit (A.R. 180).  Plaintiff's last insured date was December 31, 2007 (A.R. 19, 174).[2]

In a September 10, 2010 decision, an Administrative Law Judge ("ALJ") found Plaintiff not disabled (A.R. 17-29).  The ALJ found that

---

[2]     To be eligible for disability insurance benefits, Plaintiff must have become disabled prior to the expiration of her insured status.  See 42 U.S.C. § 416(i)(2)(C), 416(i)(2)(D), 416(i)(3)(A); 20 C.F.R. § 404.131; see Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff has the following severe impairments:  "retrolisthesis of C4 over C5 and status post cervical fusion and laminectomy; status post removal of cervical plate and screws; status post cervical foraminotomy due to cervical foraminal stenosis; legally blind right eye; facet disease of lumbosacral spine L5-S1; left shoulder tendonitis; headaches; and depression" (A.R. 19 (adopting medical expert testimony at A.R. 41)).  The ALJ stated that Plaintiff's impairments do not meet or equal a listed impairment (A.R. 19-20 (adopting medical expert testimony at A.R. 41)).

The ALJ found that Plaintiff could perform a range of sedentary work limited to simple repetitive tasks in a non-public environment (A.R. 20, 26 (adopting medical expert testimony at A.R. 41-42 concerning Plaintiff's physical capacity, and non-examining state agency physician's opinion at A.R. 1198-1200 concerning Plaintiff's mental capacity)).  The ALJ believed that, although Plaintiff no longer could perform her past relevant work, there exist other jobs Plaintiff can perform, specifically the jobs of assembler and office helper (A.R. 28 (adopting vocational expert testimony at A.R. 79-80)).  The Appeals Council denied review (A.R. 8-10).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if:  (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards.  See <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>,

499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

## DISCUSSION

Plaintiff contends, inter alia, that the ALJ failed to evaluate adequately whether Plaintiff met or equaled Listing 1.04(A).  As discussed below, the Court agrees with this contention and also discerns an error regarding the vocational evidence.  Remand is appropriate.

**I.   The ALJ Failed to Evaluate Adequately Whether Plaintiff Meets or Equals Listing 1.04(A).**

At step three of the sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 416.920(d).  If a claimant meets or equals a listed impairment, he or she is "conclusively presumed to be disabled and entitled to benefits." Bowen v. City of New York, 476 U.S. 467, 471 (1986); accord Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); see also 20 C.F.R. §§ 404.1525(a); 416.925(a) (discussing the Listings).  An impairment meets a listing if the impairment matches all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

1999).  An impairment or combination of impairments that manifests
only some of the criteria, no matter how severely, does not qualify.
Sullivan v. Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d at
1099.

    Although a claimant bears the burden of proving that she has an
impairment or combination of impairments that meets or equals the
criteria of a listed impairment, an ALJ must still adequately evaluate
and discuss the evidence before concluding that a claimant's
impairments fail to meet or equal a listing.  See Marcia v. Sullivan,
900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a
claimant equals a listing under step three . . . the ALJ must explain
adequately his evaluation of alternative tests and the combined
effects of the impairments.").  Remand is appropriate where an ALJ
fails adequately to consider a listing that plausibly applies to the
claimant's case.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir.
2001) (to trigger ALJ's duty to compare plaintiff's impairments to a
particular listing, plaintiff must present plausible theory as to how
an impairment or combination of impairments equals a listed
impairment).

    Here, Plaintiff presented a plausible theory that she met Listing
1.04(A).  Listing 1.04(A) provides:

        Disorders of the spine (e.g., herniated nucleus pulposus,
        spinal arachnoiditis, spinal stenosis, osteoarthritis,
        degenerative disc disease, facet arthritis, vertebral
        fracture), resulting in compromise of a nerve root . . . or

1   the spinal cord.  With . . . [e]vidence of nerve root

2   compression characterized by neuro-anatomic distribution of

3   pain, limitation of motion of the spine, motor loss (atrophy

4   with associated muscle weakness or muscle weakness)

5   accompanied by sensory or reflex loss and, if there is

6   involvement of the lower back, positive straight-leg raising

7   test (sitting and supine) . . . .

8

9   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

10

11      At the outset of the administrative hearing, the medical expert

12   opined without explanation that Plaintiff did not meet or equal a

13   listed impairment (A.R. 41).  During the hearing, Plaintiff's counsel

14   suggested to the medical expert and to the ALJ that Plaintiff met

15   Listing 1.04 (A.R. 53, 85).  Plaintiff's counsel argued that the

16   extensive medical record (summarized below) established that Plaintiff

17   met Listing 1.04(C) (lumbar spine stenosis) (A.R. 53).[3]

18

19      [3]   Counsel's reference to paragraph (C) of Listing 1.04
     (A.R. 53) appears to have been in error.  Plaintiff's treating
20   physician, Dr. Sobol, completed a "Listing §1.04A - Spinal Nerve
     Root Compression" questionnaire dated March 23, 2009, which
21   tracks the requirements for Listing 1.04(A) (A.R. 228-29).  See
     20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04(A).  Dr. Sobol
22   indicated that Plaintiff had a disorder of the spine identified
     as "cervical lumbar spine injuries[,] history of 3-06 multi-level
23   cervical spine fusion surgery" (A.R. 228).  Dr. Sobol indicated
     that Plaintiff has evidence of nerve root compression and neuro-
24   anatomic distribution of pain, which he described as bilateral
     arm and left leg radiculitis (A.R. 228).  Dr. Sobol noted that
25   Plaintiff has limited motion of the spine, muscle weakness, and
     Plaintiff could not walk on her heels or her toes, and could not
26   squat or rise from a squatting position (A.R. 228).  Dr. Sobol
     stated that Plaintiff has sensory loss in her upper extremities
27   and involvement of her lower back and a positive straight leg
28                                                    (continued...)

The medical expert disagreed. Although Plaintiff's treating physician Dr. Sobol had set forth listings-relevant opinions in a questionnaire, the medical expert appeared dismissive, saying, "I don't pay much attention to those things" (A.R. 42-43; see also A.R. 53 (expert saying he would want to see the exact examination that Dr. Sobol performed to arrive at his conclusions)). The expert claimed that there was nothing in the medical record to support Dr. Sobol's conclusions that Plaintiff could not walk on her heels or toes and was unable to rise from a squatting position (A.R. 50-51).

As mentioned above, the ALJ found that Plaintiff did not meet or equal any listed impairment (A.R. 19-20 (apparently adopting medical expert's conclusion at A.R. 41)).[4] While the ALJ did discuss in detail whether Plaintiff's mental impairment met or equaled listing 12.04, the ALJ did not discuss at all whether Plaintiff's physical impairments met or equaled Listing 1.04(A) (id.).

---

[3](...continued)
raising test (A.R. 229). Dr. Sobol identified "at present" as the earliest date the symptoms and limitations he noted applied (A.R. 229). The Court observes that if Dr. Sobol really intended his opinions regarding Plaintiff's symptoms and limitations to apply only from March 23, 2009 on, Plaintiff would not be entitled to benefits because this date is long after her date last insured. Given the fact that Dr. Sobol expressly referenced Plaintiff's status post March 2006 spine surgery, however, Dr. Sobol almost certainly did not intend that his opinions have no application before March 23, 2009.

[4]     In adopting the medical expert's conclusion over other opinion evidence of record, the ALJ explained that he gave weight to the expert in part because the expert had the opportunity to listen to Plaintiff's testimony (A.R. 27). However, the medical expert was excused from the hearing before Plaintiff testified, so the medical expert did not hear any of Plaintiff's testimony. See A.R. 58-59.

1    The record suggests that Plaintiff may have had nerve root

2  compression sufficient to meet Listing 1.04(A) for at least a part of

3  the time period at issue.  Plaintiff underwent three cervical spine

4  surgeries beginning in 2002 (A.R. 63-64; see also  A.R. 406-15, 422-33

5  (available records from surgeries)).  The first surgery was performed

6  on December 16, 2002, to fuse the C5 and C6 vertebrae (A.R. 64).  The

7  second surgery was performed on March 5, 2004, to remove the hardware

8  used in the first surgery, which had caused permanent nerve damage

9  from improper placement (A.R. 63, 65).[5]  The third surgery was a

10  bilateral C5-6, C6-7 posterior cervical foraminotomy performed on

11  March 27, 2006, to relieve nerve root compression (A.R. 64, 420, 422,

12  424).

13

14    Records from Dr. Sobol and his colleagues consistently report

15  that, following Plaintiff's surgeries, she has suffered from bilateral

16  ///

17

18

19

20    [5]    Following the first surgery, Plaintiff immediately
21  experienced worsening of her pain and left side radiculopathy due
     to the improper screw placement (A.R. 416; see also A.R. 566-67
22  (CT scan report noting improper screw placement)).  Once the
     hardware was removed, Plaintiff reported marked improvement in
23  her symptoms but persisting left side radiating pain (A.R. 420).
     The surgeon who removed the hardware, Dr. Robert Bray, observed
24  in a post-operative appointment that Plaintiff was "mildly
     discoordinated" with some sensory loss, and had improvement but
25  weakness in her left arm (id.).  A post-surgery MRI showed
     "marked" foraminal narrowing at the C5-6 and C6-7 levels and
26  stenosis consistent with radiculopathy (id.).  Dr. Bray
     recommended a posterior cervical foraminotomy at these levels to
27  relieve compression of the nerve roots as they exit below the
     fusion (id.).
28

upper extremity radiculitis ("B UE rad"),[6] multilevel degenerative disc disease ("DDD"), lumbar spine musculoligamentous sprain/strain with left lower extremity radiculitis ("L/S, S/S L LE rad"), left upper extremity tendinitis and medial and lateral epicondylitis ("L UE tend"), left shoulder strain and impingement with partial tear and tendinitis per ultrasound ("L shldr str/imp"), with restricted range of motion ("ROM"), impingement, and weakness on examination.  See A.R. 504-21, 868-72, 1389-91, 1463-72, 1481-82 (records from April 2006 through April 2010); see also A.R. 522-41 (records predating the last surgery noting similar diagnoses).  Although not entirely clear, the doctors also appear to have referenced bilateral lower back pain associated with straight leg raising in records from before Plaintiff's last surgery ("B SLR [up arrow] LBP" (A.R. 522, 525-26, 529-30, 533 (positive straight leg raising on the left side with lower back pain on the right side ("+ SLR L & LBP R")), 536-40).  Dr. Sobol summarized the medical records and his examination findings and diagnoses in a series of narrative reports.  See, e.g., A.R. 570-89 (report and supplement from January and March 2007), A.R. 915-46 (final report from February 2008 concerning Plaintiff's spine-related limitations showing on examination limited range of motion in the cervical spine and left upper extremities, positive straight leg raising tests both seated and supine on the left side for radiating pain to the left ankle).

---

[6]    Plaintiff testified that she suffers from occasional radiating pain on her right side, and constant pain on her left side that radiates all the way down to her left hand which she described as feeling like raw skin burned with hot water (A.R. 65-66).  Plaintiff had been taking Norco, Vicodin, and Oxycontin for her pain for the past eight years (A.R. 67).

An Agreed Medical Examination performed by Dr. Thomas Haider on April 18, 2005, reported evidence from MRI and EMG studies of radiculopathy affecting the left supraspinatus and brachial radialis muscle groups, and "permanent changes of the nerve roots affecting the C4-5 level to the left" with "significant" stenosis to the left (A.R. 326-27).  Dr. Haider, who examined Plaintiff on February 28, 2005, found, inter alia:

> On exam today the patient has a healed surgical scar to the left and right of the anterior neck region.  There is tenderness and muscle spasm at her neck.  Her neck range of motion is 90 percent of normal.  Spurlings test is positive to the left with some guarding.  Sensation is decreased in the left upper extremity C5 and C6 nerve distribution. . . . She has slight tenderness in the upper back.  There is tenderness, guarding and some muscle spasm in the lower back.  Her lower back range of motion is 80 percent of normal.  Straight leg raising test is positive in the left lower extremity [both sitting and supine].  Sensation is decreased in the left lower extremity L3 to S1 nerve distribution.  Deep tendon reflexes are 0 at both knees and ankles.

(A.R. 340; see also A.R. 337, 1427-28, 1434-42 (reports from Dr. Haider for February 2005, April 2007, and July 2007 noting positive straight leg raising in the lower left extremity)).  These findings related to a work-related injury Plaintiff suffered on October 23, 2001 (A.R. 340).

1     An orthopedic consultation report by Dr. John Simmonds dated
2   January 17, 2008, states that Plaintiff:  (1) was able to move about
3   the office slowly; (2) had a notable left antalgic gait with
4   favoritism to the right side, but an ability to walk on her heels and
5   toes with difficulty along the lower extremity; (3) had a limited
6   range of motion; (4) had negative bilateral straight leg raising tests
7   but lower back pain with elevations over 50 degrees; (5) had
8   radiculopathy in her left lower extremity; and (6) has tendonitis in
9   her left shoulder (A.R. 859-63).  Dr. Simmonds did not opine whether
10   Plaintiff's condition met or equaled a listing, but did opine that
11   Plaintiff could perform a limited range of sedentary work (A.R. 863).
12
13     Earlier objective tests provide evidence of Plaintiff's
14   degenerative disc disease and possible nerve root compression.  A
15   cervical spine MRI report from February 2006 showed protrusion at the
16   C3-4 and C7-T1 levels with minimal contact of the spinal cord (A.R.
17   549; see also A.R. 551 (November 2003 report reflecting similar
18   findings), A.R. 552-53 (May 2004 report noting disc bulges at various
19   levels)).  A lumbar spine MRI report from May 2004 showed mild
20   degeneration of the upper four lumbar discs and mild diffuse
21   straightening of the lumbar lordosis (A.R. 550).
22
23     An MRI of Plaintiff's cervical spine dated July 23, 2002, showed
24   minimal reversed lordosis of the upper mid cervical spine, mild
25   posterior bulging of the annulus of the C3-4 disc, minimal
26   retrolisthesis of C4 over C5 with mild posterior bulging of the
27   annulus of C5-6 and C6-7, but no evidence of central canal stenosis or
28   cervical cord compression (A.R. 309; see also A.R. 312 (radiology

report dated October 23, 2001, also noting retrolisthesis of C4 over C5)).

Neurological testing from October 2003 revealed evidence of early peripheral neuropathy in the left upper extremity (A.R. 555-57). Testing from May 2004 showed no evidence of neuropathy affecting the lower extremities (A.R. 560-62; compare A.R. 795-802, 806-23 (testing from December 2003, July 2004, and October 2005 focusing on headache complaints noting normal gait, no evidence of atrophy, limited range of motion in the head and neck, and decreased sensation to the left upper extremity); A.R. 836-51 (testing from August 2006 reporting limited range of motion in the head and neck, slight lower left extremity limp, and give way type weakness of the muscles of the left upper extremity and both lower extremities)).

On this record, the Court concludes that neither the ALJ nor the medical expert adequately considered and discussed whether Plaintiff met or equaled Listing 1.04(A) during all or any part of the relevant disability period.  Defendant contends that the ALJ's discussion of the medical evidence provides sufficient reasoning to support the ALJ's conclusory step three findings.  The ALJ did discuss the medical evidence and did reference the various findings concerning nerve root compression, radiculopathy, straight leg raising tests, and the March 2006 surgery to address Plaintiff's nerve root compression (see A.R. 21-27).  However, the ALJ did not explain how these findings comport or fail to comport with Listing 1.04(A).  On remand, the ALJ should consider these issues and explain the specific basis for any finding at step three.  See Adea v. Astrue, 2011 WL 2261072, at *4 (C.D. Cal.

June 8, 2011) (remanding where ALJ failed to make "full and detailed findings of fact essential to" the ultimate finding that the claimant did not meet a listing) (quoting Lewin v. Schweiker, 654 F.2d 631, 634-35 (9th Cir. 1981)); Bouchard v. Astrue, 2010 WL 358538, at *4 (C.D. Cal. Jan. 25, 2010) (deeming insufficient on similar facts an ALJ's conclusory statement that the claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments").

**II.  Substantial Evidence Does Not Support the Administration's Decision that Plaintiff Can Work.**

Although not raised specifically by the parties, the Court observes that even if the ALJ had adequately considered and explained whether Plaintiff met the Listings at step three, substantial evidence would not support the ALJ's adverse disability determination at step five of the evaluation process.

As previously stated, the ALJ relied on the testimony of a vocational expert to determine that there exist jobs that Plaintiff can perform.  Specifically, the ALJ found that Plaintiff could perform work as an assembler and an office helper – jobs the ALJ described as sedentary.  See A.R. 28 (purportedly adopting vocational expert testimony at A.R. 80).  While the assembler job is sedentary, the office helper job is light.  See A.R. 80 (vocational expert so explaining); see also Dictionary of Occupational Titles § 734.687-108 (assembler) and § 239.567-010 (office helper).

///

1   This distinction may make a difference in Plaintiff's case.  The
2   residual functional capacity presented to the vocational expert was
3   not identical to the residual functional capacity the ALJ found to
4   exist.  The hypothetical question the ALJ posed to the vocational
5   expert omitted a limitation to no more than occasional bending, and
6   also assumed that Plaintiff could lift less than 10 pounds
7   occasionally and less than 20 pounds frequently, rather than the 10
8   pound lifting limit the ALJ found to exist.  Compare A.R. 20
9   (Plaintiff's capacity) with A.R. 79 (hypothetical).  A limitation to
10  lifting less than 10 pounds would preclude all light work, including
11  the office helper job.  See Social Security Ruling 83-10, 1983 WL
12  31251, at *5-*6 (defining light work as involving lifting no more than
13  20 pounds at a time).[7]

14

15  Whether a person limited to occasional bending could perform the
16  job of an assembler is unclear on the present record.  Because of the
17  incompleteness of the hypothetical question, the vocational expert did
18  not consider Plaintiff's bending limitation.  Where a hypothetical
19  question fails to "set out all of the claimant's impairments," the
20  vocational expert's answers to the question cannot constitute
21  substantial evidence to support the ALJ's decision.  See, e.g.,
22  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991); Gamer v.
23  Secretary, 815 F.2d 1275, 1280 (9th Cir. 1987); Gallant v. Heckler,
24  753 F.2d 1450, 1456 (9th Cir. 1984).
25  ///
26  ///
27  _____
28      [7]   Social Security rulings are "binding on ALJs."  Terry
v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

III. **Remand is Appropriate.**

Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. See McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

**CONCLUSION**

For all of the foregoing reasons,[8] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 18, 2013.


_____/S/_____
                  CHARLES F. EICK
            UNITED STATES MAGISTRATE JUDGE

---

[8]      The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.